Slep-Tone is a small company that made a product that was very important to the karaoke industry. The product is the Sound Choice brand of the karaoke company. In this case, there are two sets of claims that are at issue before the court today. One are trademark and service market infringement claims, and related torts to those, as well as a contract claim that arose from the Supreme Court's breach of prior settlement. Is this state law counterfeiting claim before us? It was discussed by the district court. I don't find very much in your briefing about it. Maybe a footnote. It's not. It's great. The standard is that there's not much in the brief because the standard for whether something is a trademark infringement or not, or a state law counterfeiting claim or not, a trademark counterfeiting claim or not, it turns on the same questions. Claims rise or fall. There's a different question, I think, that Judge Hurwitz is getting at. Ordinarily, if an argument is not raised separately and clearly in the opening brief to this court, we will not decide it, even if it was discussed ad nauseum in the district court, that it's considered a waiver. So I think his question goes to whether, even though it was fairly pleaded and dealt with in the district court, whether your opening brief sufficiently raises a separate state-based counterfeiting statutory claim because it's somewhat different from a federal claim in its criteria. What's your take? I understand the point. I believe it was briefly raised at our brief. One more question, because you said the standards are the same. They're not, are they? The one thing I'm pretty certain about is I know Arizona law. I'm not so sure I'd be able to figure out a trademark law. But under Arizona law, there's a statutory presumption that you have to show sale or distribution, and that's a little bit different than the federal trademark law, isn't it? I think there are some differences. I think the question is the same. I think that if this court decides it wasn't appropriately raised on appeal, we don't have an issue with that. And moving on, I think one of your topics was where is the consumer confusion about the producer of goods requirement, that the digital copy has subtotems or do they? The only difference would appear to be the format in which it's presented. What is the confusion? Well, the confusion is rooted in the Supreme Court's decision in the Daystar case, right, that for purposes of the landmark, the origin of goods or the origin of services in this case, is not the author of the underlying content. That would be a contrarian claim, rather the creator of the physical goods that are in use. And in this case, Mr. McCuller did not use the original goods that were supplied to him. He used copies. But you authorize copies, right? You allow them to actually use copies. And it seems to me you're arguing really seriously about the fact that they didn't get permission to do that, that there's confusion, right, but that if they had gotten permission, you wouldn't be arguing confusion, is that right? Right, because our quality controls would have come into play. Let's put quality aside for a second. I'm a consumer of karaoke. The clock has reset. I know. It's one of our little tricks. We'll see if we can turn it. We'll put you back on mute at a time. You're supposed to be on mute. Okay. So I'm a consumer of karaoke, which is to say I go to karaoke bars and sing. I wouldn't be confused about where this program came from. Your name is on it. Your client's name is on it. My client's name is on it. And I think, first of all, the likelihood of confusion is a question of fact, or at best, a loss question. But on some way of judgment, when the facts are not disputed, you know, so here it's undisputed that every consumer saw your client's name on the program if they cared. I think you're saying the way the trademark was observed was 1236, and therefore I think it was inappropriate for. Well, there may be other reasons. Okay, but fair enough. I answer that question. If every consumer saw your client's name on the program, how could there be consumer confusion? Because my client did not make the rules that were in use, did not authorize the services that were being provided. It is true that it's not John Lyle's copy, but there are very specific terms and conditions under which that copy can occur, and those terms and conditions are geared toward maintaining a very high-quality standard. That sounds to me like a copyright claim. That's my view. I understand everything you were saying if this were a copyright claim, but it's a trademark claim. Well, it is a trademark claim. Either reason is good. However, it's an issue of quality control. We have no interest in, at least as far as this case is concerned, in the actual content of the speakers. I take it you don't have a copy right now. You don't really have a copy right now. That's not before the court. Okay. The issue here is not the communicative content of that material. It's about the quality of the copy. There is ample citation in the record in the Second Amendment complaint to show that we have an issue with the quality control of the circuit. A storyteller has employed it. He has discarded somewhere between 60% and 90% of the information. In paragraph 26 of the Second Amendment complaint, it's associated with that document. Is this case distinguishable from the Seventh Circuit case? It is very much distinguishable, first of all. In the Seventh Circuit case, talking about Robinson, the defendant in the case was in karaoke bar. There were only the goods trademarks that were issued to them on the services bars. And the way that that karaoke bar actually ran its business, it did not charge anything for its services, its karaoke services. It was just something to provide. Well, if you're trying to sell a distribution issue, I would come to you saying, essentially what Judge Baldwin was saying, which is that there couldn't be consumer confusion here. And that seems to be really exactly the situation in this case, doesn't it? Well, and here's the problem. We're at Rule 12.6, consumer confusion, whether there is or not. It's a matter of fact. We might have an opportunity to present that. Or you have to disallege it. In terms of facts, we recognize we differ, which you allege is that they didn't get permission to show the same thing, which is not an allegation, that the actual image that was shown or the product that was shown was different, right? There is confusion. Hold on, I have a hard question. Do you allege that the image or the mark that was shown was actually different on the copy than on your CDG version? Yes, because of the discarding of information. No, no, that's not what Judge Baldwin asked. He asked whether or not the trademark, the mark that was shown to consumers in this case was different than your mark. I think that the image itself is the same. The issue is, however, the quality of the goods to which that mark was attached and the quality of the services to which that mark is attached. It's not at the level that the subject said in terms of quality control. I don't think you can separate those as a matter of law. Trademarks are designed to be indicators to the consumer of quality control. And so the confusion occurs with Mr. McCuller as a free actor without insulting us. It's a level of quality control without insulting us, because it's our mark rather than a record. Consumers are going to be confused because of the level of quality that we enforce. So, go ahead, go ahead, Judge. I was going to change topics. No, no, no, go ahead. I wanted to get your thoughts on the motion for substitution of the successor interest. Could you comment briefly on that, please? I know, but please answer my question. The motion for substitution is a very basic motion. Essentially, Phoenix Entertainment Partners acquired the assets of the Sloan County Entertainment Corporation after this case was filed. And after this appeal was filed, he was looking at simply seeking to have Phoenix as the successor in interest and be the real party in interest. Assets or assets and liabilities? Assets only. Should we just add them as a party? I'm sorry, I may have misspoken a bit. There are certain liabilities, because there were contracts that were acquired, including a lot of the contracts in this case, that slipped up and had obligations under the contract as well. So, Phoenix would step in. Should we add them rather than substitute them? I think that would be up to the Court's discretion. Of course. I don't necessarily have a position as we do on this one. Thank you. Thank you. Next one. Ms. Lori. Hi, I'm Lisa Lori. I'm a visiting counselor. My name is Lori Gorey, and I represent the American Inspired Facility Teaching Services, LLC, and our exchange with Harvard. I'll be referring to them collectively as wired. This Court should affirm the District Court's rulings. We have this case for two reasons. First, Sliptone has attempted an infrared and a rounded copyright law to assert his trademark infringement. This judge would get the District Court to correctly state that Sliptone refused to stuff copyright claims into a trademark container and fails. Second, Sliptone's breach of contract claims are concluded as a matter of law by Sliptone's own contract and in their own actions, and they should not be allowed a second writing from a real client. Well, you guys got the second writing from Apple in the sense because you, your client, breached the settlement agreement, and therefore gets away without paying what was agreed to be paid under that agreement. So, you know, the equities certainly are not all on one side of this case, and I am, I guess I'm not an expert in Arizona law. That's probably the understatement of the day, but I'm uncertain why that isn't a valid claim that they breached the settlement agreement. Well, Your Honor, my client was not the only one that did. A couple of agreements, Bob Jones did as well. Well, but for purposes, we're going to talk these things here. Okay. Did they sue you for breaching the settlement agreement? As I understand it, they could have sought only to revive their trademark claims. The complaint is broad enough, I think, so that it seeks damages to a judgment. Well, Your Honor, the contract claim is actually not under 512B6. It was actually on the election for some reason. Okay, but still, they are seeking damages, and it drove differently for them. Are you talking about self-tolerance? Self-tolerance. Yeah, self-tolerance. Okay, so why do we find an election at the dating stage as opposed to normally, it had been a choice of remedy, so you let somebody get to the end of the case, and you said, okay, you're either entitled to an injunction or damages. Which do you want? Why is Inspector O'Neill in the decision having to choose early on for its breach of contract claim? Well, actually, Your Honor, they did choose early on because it was their contract. It was undisputedly integrated, and their contract said that you can use a suit for trademark infringement or a suit for breach of contract. Right, but that doesn't answer Mr. Hurwitz's question. What if they sued for both? Is that an election of one rather than the other? Actually, I think that is an election. Well, why isn't it an election just as valid to say, well, they elected to sue under the contract. We have to ignore the suit related to trademark. Why isn't that equally a valid way to look at the election? Because the way the contract was written was using that word or. I understand that. That's A or B. And if they do both, you say, well, it has to be B. You just, you know, A is no good anymore, but I don't see why A isn't the one that's the selection, and B goes with A. Well, because Your Honor, in the contract, it says that it's an option. It can be A or B. Right, I understand that totally. Let's assume that it's an option. It says, I'd like A or B. It goes to the court and says, I have an option, Judge. I'd like A or B, you choose. Has it waived both? Well, I don't know that it would waive both. Which one? However, if we use A, I don't see the answer to that question. Why don't we say, I don't understand why it isn't equally valid to say, they've got a claim here for breach of the settlement agreement, and because of the way it was written, they can't seek these trademark damages. So, go forth and litigate on the settlement agreement only. Why isn't that the right answer? It could have been. I understand that. But what the court said was, you have to ignore the settlement contractual claim and go only for trademark. But I don't see why it isn't the opposite. Well, wouldn't that render the word, or, in the end to itself? Why don't we make the case that it's just a choice agreement? In other words, let's say I went to the district judge and said, Judge, did Judge Brady care to get this one guy? We don't know whether we're doing those trademark relief. But if we're not, we'd like damages. If we are, we'd like trademark relief. We'd like A or B. But we'd like you to decide which one we get. Is that a waiver of purpose? I think that could be. But you have to remember that Selectone is the one that wrote this contract. If they wanted those remedies to make sure that all the remedies were included, they should have written that in their contract. But there is no qualifying language that says, add as option A or B. It doesn't say including any other remedies. But why decide it when the district court did decide it? Because that's, I think, implied in George's question about this being a short supremacist. Why not let it go all the way to trial and then, as often is the case, you can choose one or the other. Why would it be appropriate to affirm it at this early stage when there is this or option? And Judge Weber said it could be either of choice. Why not? This breach of contract claim is not raised until the second amended complaint. But it's been so long. Right. No, no, no, no. You shouldn't have it. You shouldn't have it. So it's in the second amended complaint. And Selectone did file their motion for summary judgment on this issue. And when the court looked at it, and the line looks favorable to the non-movement, they found that as a matter of law, he interpreted the language and he interpreted the words and the plain meaning of the words to mean that they had A or B. By the way, the question is, is the plain meaning of the language A or B at the pleading stage only, or how are we to find that particular issue? It's not that there isn't an or. We all recognize that it says or. The question is, when does an or actually take on a force such that they have to make an election with respect to the remedy? I believe that that happened when the default happened. When the default actually occurred in Selectone's high stage, they made that option. So in other words, your argument is that the pleading stage had to make a choice. They couldn't plead in the alternative. They couldn't say, I like A or B. They had to actually choose based upon the contract. That's your argument? Yes. Because the language of the contract is so focused on it. Selectone made its option Y. I don't know if it's Y. Accelerate any debt or do it. Declare them to be if they do. Or, void the covenant in paragraph 13 of Article 16 of Action for trademark infringement. So my question is, do they void the covenant in some other way other than breaking the suit? Well, Your Honor, the judge, Judge Wake did look at all of the No, Judge Wake is a terrific judge. He's very careful. But I asked a very specific question. Did they void the covenant in some other way other than by breaking the suit? In other words, did they send a debate letter to your client that said, You're hereby voiding the covenant. Is the voiding of the covenant solely as a matter of breaking the suit? I believe it's only as a matter of breaking the suit. Also, it's important to note under this contract as well, that when that covenant was voided, that Judge Wake did look to see that all of the trademark that was alleged under there included all of the inclusive data that would have been before and after the agreement. And it was only until after they had the second amended complaint was the breach of contract claim perceived. One question, counsel. If we were to consider that the state counterintuitive had probably been raised on appeal, wouldn't they have sufficiently played it under his own? No, Your Honor, I don't believe so. Because the reason for that is that on the counterfeit, is we are actually making a new product now. So I don't know how it's played that by copying it from one motion to another, it's actually creating a new product when it's actually being used. But this was on 12th and 6th, wasn't it? Or was it on 8th and 9th? 8th and 9th, that's right. The counterfeit claim. So they pleaded that they made a new product, and they pleaded that there were 26 or more counterfeits out there, and they pleaded sale or distribution. My guess is they can't prove any of that based on what we have now, but isn't that enough at the pleading stage? Well, no, Your Honor, not at this stage either. Because even with counterfeiting, counterfeiting when you're making a new product and it's adding someone's trademark and trade trust to it, that would certainly be counterfeiting. But in this case, my client didn't even want to go to copying it from one meeting of the CDGs to another meeting. And the actual technology of the actual copying is being judged here, not the actions of my client as far as whether a trade trust and trade, you know, if there's any kind of quality is what Mr. ---- Well, I think Judge Horwitz' question is about how it's played out, about information we would acquire after, right, the complaint was filed, but it was sufficiently alleged. I guess what you're relying upon is part information that is not in the complaint, right? Right, I guess. So the question is about the sufficient pleading. Was it sufficiently played? In my opinion, it was not, or not when it was taken in context with the rest of the pleading for counterfeiting. I know they are spicy. You do. Thank you. Use them well. Okay, well, in conclusion, we are here to ask the court today to find and affirm Judge White's feelings in both the breach of contract and the trademark claims. Thank you, counsel. Thank you. Mr. Garrington, you used all your time, but we asked a lot of questions. You may have one minute if you want to. Thank you, I appreciate that. Judge Horwitz asked the question, or perhaps it was Judge Goldberg, or maybe both of you, why are we required at the pleading stage to collect, between A or B, the contract damages and the trademark damages? And I think that the better answer to that question is yes, no, we are not actually required to make that election, because the purpose of that clause in the agreement is not to play a game as to what gets pled or not. It is to give a remedy. Well, it's your option. And the reason I read that language to your vote is it says, it's not totally in its option, what is, accelerate the debts that you do above the brief action for breach of the agreement, or C, void the covenant above an instance of an action for trademark infringement. Because the covenant, if the covenant is not voided, then it bars the action for trademark infringement. So isn't your filing of this action for trademark infringement precisely an option to void the covenant? I think if I may respond to the question, it is an action that voids the covenant not to suit, but it only voids the covenant not to suit. It doesn't require, or it doesn't put a certain color off the book. Well, when you bring this action, Mr. McCulloch says, you can't sue me because I have a covenant. And you say, oh, yes, we can, because we've chosen to sue you rather than pursue the other route. Right. I mean, otherwise, otherwise you can defend your trademark infringement claim fails on its face because he has a covenant. It fails as to damage, as to acts of undertaking. Right. And you are suing for those. You are suing. Well, I don't think the complaint is clear as to that one. You are seeking damages for those, right? You're seeking damages for trademark infringement that occurred. You're definitely seeking it for damages that occurred after. Because why, if I can use your numbering, why only relates to debts owed to you, which is to say things that occurred before you, right? That's correct. Okay. You sued him for those. You sued him for contract breach of contract. You sued him for debts owed to you wholly apart from trademark infringement after the date of settlement, correct? Yes, that is correct. Okay. So when you did that, didn't you necessarily void that covenant, which promised not to sue him for those? I think if you weren't over there, we wouldn't prevent that from occurring. We can sue him for trademark infringement that occurred after the summary signed, even apart from anything, if nothing had happened at all, if there had been no breach of contract, except that he continued to sue. Sure. What I'm having trouble with here, and I know I'm taking you over time, is the language that apparently your client drafted, although I'm not sure the record's clear on that, is void the covenant providing paragraph 13 above and institute an action for trademark infringement. So it seems to me that in order to institute an action for trademark infringement, you would necessarily have to void the covenant, don't you? I think that's no. I don't think so, because our trademark infringement action could very well have related to acts that occurred after such action being based upon acts of defendant undertaken both before and after the effective date of this agreement. It seems to me that that language, which is kind of strange, says it is prerequisite to institute an action for trademark infringement either before or after you have to opt it to void the covenant. I think the point is that we elected at the time of the filing to do both, and our intention was to give ourselves the option for both remedies at a later stage. Thank you, counsel. Thank you. The case just argued is submitted, and we appreciate the arguments from both counsel.
judges: Graber, Hurwitz, Boulware